UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

IN RE:                                                                          **OPINION & ORDER**

MIRENA IUD PRODUCTS LIABILITY LITIGATION                  13-MD-2434 (CS)
                                                                                 13-MC-2434 (CS)
*This Document Relates To*                                           13-CV-7811 (CS)

Truitt v. Bayer, 13-CV-7811

-----------------------------------------------------------------------x

<u>Appearances</u>:

Dr. Shezad Malik, Esq.
Dr. Shezad Malik Law Firm PC
Dallas, Texas
*Counsel for Plaintiff*

Diogenes P. Kekatos, Esq.
Seeger Weiss LLP
New York, New York
*Plaintiffs' Liaison Counsel*

Daniel Gallucci, Esq.
Nastlaw LLC
Philadelphia, Pennsylvania
*Member of the Plaintiffs' Steering Committee*

Tina Glandian, Esq.
Geragos & Geragos
Los Angeles, California
*Member of the Plaintiffs' Steering Committee*

Shayna S. Cook, Esq.
Goldman Ismail Tomaselli Brennan & Baum, LLP
Chicago, Illinois
*Counsel for Defendants*

William P. Harrington, Esq.
Bleakley Platt & Schmidt, LLP
White Plains, New York
*Counsel for Defendants*

Seibel, J.

Before the Court is Defendants' Motion to Dismiss.  (13-CV-7811 Doc. 33; 13-MD-2434 Doc. 881.)  For the following reasons, Defendants' Motion is GRANTED IN PART and DENIED IN PART.

## I.       BACKGROUND

For purposes of this Motion to Dismiss, I accept as true the facts, but not the conclusions, as set forth in the Second Amended Complaint ("SAC").  (13-CV-7811 Doc. 29.)  I recite only those facts relevant to this decision.

Plaintiff is a resident and citizen of Indiana.  (SAC ¶ 1.)  Defendants are three related companies that manufacture, design, formulate and package the Mirena intrauterine device ("IUD").  (*Id.* ¶¶ 2, 24.)  Defendant Bayer Healthcare Pharmaceuticals Inc. is a Delaware corporation with a principal place of business in New Jersey.  (*Id.* ¶ 3.)  Defendant Bayer Pharma AG is domiciled in Germany and is Bayer Healthcare Pharmaceuticals Inc.'s parent or holding company.  (*Id.* ¶ 6.)  Defendant Bayer OY is a Finnish company that owns the Mirena trademark. (*Id.* ¶¶ 11-12.)

The Mirena IUD is used to prevent pregnancy, (*id.* ¶ 23), and is approved to remain in the uterus for up to five years, (*id.* ¶ 24).  Mirena consists of a T-shaped polyethylene frame with a steroid reservoir that releases a certain amount of levonorgestrel (a synthetic hormone) per day. (*Id.* ¶¶ 21, 23.)  A healthcare provider inserts the Mirena during an office visit.  (*Id.* ¶ 21.) Although the warning label in effect when Plaintiff's Mirena was inserted states that Mirena may migrate out of the uterus if the uterus is perforated during insertion, it does not warn about spontaneous migration of the IUD after insertion.  (*Id.* ¶ 26.)

Case 7:13-cv-07811-CS   Document 50   Filed 07/02/14   Page 3 of 27

On or about April 30, 2009, a gynecologist, Dr. Cathy Carr, and a gynecological nurse practitioner, Ms. Georgia Steinman, advised Plaintiff about the risks and benefits of using Mirena for contraception.  (*Id.* ¶ 34.)  During this office visit, Dr. Carr and Ms. Steinman examined Plaintiff and reviewed her medical history, and informed Plaintiff that she was a proper candidate for Mirena.  (*Id.* ¶ 35.)  Plaintiff was also given a Mirena medical consent form that she read and signed, and a booklet that Defendants created to educate patients about Mirena. (*Id.* ¶ 34.)  Based on the information in the booklet and her conversations with Dr. Carr and Ms. Steinman, Plaintiff consented to insertion of the Mirena, (*id.* ¶ 35), and the procedure was performed the same day, (*id.* ¶ 36).  After the procedure, Dr. Carr and Ms. Steinman told Plaintiff that the insertion had gone well and there were no complications or problems.  (*Id.* ¶ 37.)  Plaintiff was instructed to check the Mirena strings monthly and to call her doctor's office if she experienced severe cramps, heavy bleeding or a fever over 100 degrees during the three days following insertion.  (*Id.*)  Plaintiff did not experience, during the first three days after the Mirena was inserted, any of the complications about which she was warned.  (*Id.* ¶ 38.)

In early July 2011, Plaintiff began to experience nausea and intermittent vomiting, and grew concerned that she might be pregnant.  (*Id.* ¶ 41.)  Plaintiff did not have a fever or vaginal bleeding.  (*Id.*)  During an appointment on or about July 7, 2011, Dr. Carr told Plaintiff that the Mirena strings could not be seen, which meant that the IUD might have moved and that Plaintiff might have an ectopic pregnancy.  (*Id.*)  Plaintiff was told that if the IUD had moved, it would have to be removed, and that Plaintiff should promptly go to an emergency room for further treatment, which would include determining whether she was pregnant, and having the IUD removed.  (*Id.*)

On or about July 8 and 9, 2011, emergency room doctors and staff, as well as a gynecologist, Dr. Nathalie Castillo, examined Plaintiff.  (*Id.* ¶ 42.)  After a pelvic examination revealed that the Mirena strings were not visible, (*id.*), further examination and testing showed that the Mirena was in Plaintiff's left lower abdomen – in other words, that the Mirena had perforated Plaintiff's uterus and migrated into her abdomen, (*id.* ¶ 43).  Plaintiff also had one or more ovarian cysts.  (*Id.*)  Dr. Castillo performed surgery to remove the Mirena from Plaintiff's abdomen.  (*Id.*)  Plaintiff was not pregnant.  (*Id.*)  In response to Plaintiff's questions regarding her ability to become pregnant, Dr. Castillo told Plaintiff that the Mirena had caused her cervix to thin and the ovarian cysts to form and advised Plaintiff that, if Plaintiff wished to become pregnant again, she would have to be off Mirena for some time so that her cervix could thicken and the cysts could shrink and disappear.  (*Id.* ¶ 44.)

Plaintiff filed this action on September 26, 2013.  (*See* 13-CV-7811 Doc. 1.)  Plaintiff asserts several claims: defective manufacturing, design defect, negligence (in designing Mirena), failure to warn, strict liability (products liability theory), breach of implied and express warranties, negligent and fraudulent misrepresentation, and fraud by concealment.  (SAC ¶¶ 48-122.)

## II.   DISCUSSION

### A.  Standard of Review

 "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted).  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id*. at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

A defendant may raise a statute of limitations defense in a Rule 12(b)(6) motion to dismiss.  *Gelber v. Stryker Corp.*, 788 F. Supp. 2d 145, 153 (S.D.N.Y. 2011) (citing *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989)).[1]  The plausibility standard announced by the Supreme Court in *Iqbal* and *Twombly* applies to motions to dismiss based on statutes of limitations, *see George v. Strayhorn*, No. 11-CV-3701, 2014 WL 1259613, at *2

---

[1] MDL transferee courts apply the law of the transferee court as to matters of federal law, *Berry v. Bryan Cave LLP*, No. 08-CV-2035, 2010 WL 1904885, at *3 (N.D. Tex. May 11, 2010) (citing *Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993)), which include Rule 12(b)(6) standards, *id.* (citing *Prudential Ins. Co. of Am. v. Clark Consulting, Inc.*, 548 F. Supp. 2d 619, 623 (N.D. Ill. 2008)).

(S.D.N.Y. Mar. 24, 2014), and "the Court can only grant a motion to dismiss based on statute of limitations grounds if there is no factual question as to whether the alleged violations occurred within the statutory period," *Clement v. United Homes, LLC*, 914 F. Supp. 2d 362, 369 (E.D.N.Y. 2012).

### B.  Documents Considered on a Motion to Dismiss

When deciding a motion to dismiss, the Court's "review is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).  The Court may also rely on matters of public record, such as judicial documents and official court records, in deciding whether to dismiss a complaint. *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998).  Finally, the Court may rely on documents "integral" to the complaint.  *See Weiss v. Inc. Vill. of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011).  If matters outside the pleadings are presented in a motion to dismiss, those matters must either be excluded or the motion must be treated as one for summary judgment under Rule 56.  Fed. R. Civ. P. 12(d).

Defendants have presented two documents:  the Plaintiff Information Booklet, (13-MD-2434 Doc. 882-2), and warning labels, (13-MD-2434 Doc. 882-1), that were in place when Plaintiff's Mirena was inserted.  The SAC specifically refers to both documents, (*see* SAC ¶¶ 25-27, 34), and bases several claims on the allegedly misleading quality of the warnings in the documents.  The Patient Information Booklet and warning labels were thus integral to and incorporated by reference in the SAC and can be considered on this Motion.  *See DeLuca v. AccessIT Grp.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) ("To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents.") (internal quotation marks omitted).

6

### C. Choice of Law

An MDL transferee court "applies the substantive state law, including choice-of-law rules, of the jurisdiction in which the action was filed." *Menowitz*, 991 F.2d at 40.  Because Plaintiff filed this case in the United States District Court for the Northern District of Texas, Texas's choice-of-law rules apply.  Texas's choice-of-law rule for statutes of limitations in "action[s] for the death or personal injury" of an individual in which the "wrongful act, neglect, or default causing the death or injury" occurred outside of Texas is codified in Texas Civil Practice & Remedies Code § 71.031.  *See Hyde v. Hoffman-La Roche, Inc.*, 511 F.3d 506, 511, 513 (5th Cir. 2007) (Section 71.031 is a codified choice-of-law rule that "by its terms . . . applies to all personal injury claims in which 'the wrongful act, neglect, or default causing the death or injury takes place in a foreign state or country' regardless of whether the claims are statutory or common-law claims").  Under § 71.031, a personal injury action brought in Texas can only be maintained "if: . . . (2) the action is begun in [Texas] within the time provided by the laws of [Texas] for bringing the action; [and] (3) for a resident of a foreign state or country, the action is begun in [Texas] within the time provided by the laws of the foreign state or country in which the wrongful act, neglect, or default took place."  Tex. Civ. Prac. & Rem. Code § 71.031(a).

Because Plaintiff is not a resident of Texas, (*see* SAC ¶ 1), her claims must be timely under both Texas law and the laws of the state "in which the wrongful act, neglect, or default took place," Tex. Civ. Prac. & Rem. Code § 71.031(a).  Plaintiff's products liability and negligence claims sounding in design defect or faulty manufacturing must, therefore, be timely under the laws of both Texas and the state – which is not pleaded in the SAC – in which Plaintiff's Mirena was designed or manufactured.  *See Sloss v. Gen. Motors Corp.*, No. 00-CV-1036, 2001 WL 1081303, at *3-*5 (N.D. Tex. Sept. 12, 2001) ("wrongful act, neglect, or

7

default" language of § 71.031(a)(3) refers to the state in which defendant defectively designed or manufactured the product, not the place of injury). Plaintiff's products liability and negligence claims sounding in failure to warn, as well as her breach of warranty and fraud claims, must be timely under both Texas and Indiana law, because Plaintiff resides in Indiana and apparently was treated there. (*See* SAC ¶¶ 1, 34, 41-42); *Sulak v. Am. Eurocopter Corp.*, 901 F. Supp. 2d 834, 844 (N.D. Tex. 2012) ("[F]ailure to warn would have arisen in Hawaii because that is where the helicopter was operated."); *Flick v. Wyeth LLC*, No. 12-CV-12, 2012 WL 4458181, at *1-*2 (W.D. Va. June 6, 2012) (under § 71.031, statute of limitations of Texas and state in which drug was administered governed fraud and breach of warranty claims brought as part of products liability suit against drug manufacturer).

### D. Products Liability – Causes of Action One Through Five

#### 1. Texas's Statute of Limitations and Discovery Rule

Texas's statute of limitations for personal injury actions requires that such claims be filed "not later than two years after the day the cause of action accrues." Tex. Civ. Prac. & Rem. Code § 16.003(a); *see Livingston v. Danek Medical, Inc.*, No. 96-CV-3555, 1999 WL 33537322, at *3 (S.D. Tex. Oct. 13, 1999) (applying § 16.003(a) to products liability and negligence claims). "Generally, accrual occurs on the date 'the plaintiff first becomes entitled to sue the defendant based upon a legal wrong attributed to the latter,' even if the plaintiff is unaware of the injury." *Vaught v. Showa Denko K.K.*, 107 F.3d 1137, 1140 (5th Cir. 1997) (quoting *Zidell v. Bird*, 692 S.W.2d 550, 554 (Tex. App. 1985)). "Under Texas' discovery rule, [however,] the limitations period is tolled until the plaintiff discovers, *or through the exercise of reasonable diligence should have discovered*, the nature of her injury." *Id.* (emphasis in original) (citing *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990)); *see id.* ("[T]he discovery rule 'mandates that the plaintiff exercise reasonable diligence to discover facts of negligence or

8

omission.'") (quoting *Bell v. Showa Denko K.K.*, 899 S.W.2d 749, 754 (Tex. App. 1995)).  The discovery rule applies only where the nature of the injury is inherently undiscoverable.  *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001); *see id.* at 734-35 ("An injury is inherently undiscoverable if it is, by its nature, unlikely to be discovered within the prescribed limitations period despite due diligence.").  Moreover, "'the question to be determined is not whether a plaintiff has actual knowledge of the particulars of a cause of action  . . . rather, it is whether the plaintiff has knowledge of facts which would cause a reasonable person to diligently make inquiry *to determine his or her legal rights*.'"  *Vaught*, 107 F.3d at 1141-42 (emphasis in original) (quoting *Bell*, 899 S.W.2d at 754); *see Coody v. A.H. Robins Co.*, 696 S.W.2d 154, 156 (Tex. App. 1985) ("The discovery rule speaks only of discovery of the injury.  It does not operate to toll the running of the limitation period until such time as plaintiff discovers all of the elements of a cause of action.").

2.   Indiana's Statute of Limitations and Discovery Rule

Under Indiana law, "a product liability action must be commenced within two (2) years after the cause of action accrues."  Ind. Code § 34-20-3-1(b)(1).  Although the statute does not define "accrues," Indiana courts have adopted a discovery rule – similar to that applied in Texas – under which the statute of limitations "'begins to run from the date that the plaintiff knew or should have discovered that she suffered an injury or impingement, and that it was caused by the product or act of another.'"  *Nelson v. Sandoz Pharms. Corp.*, 288 F.3d 954, 966 (7th Cir. 2002) (quoting *Degussa Corp. v. Mullens*, 744 N.E.2d 407, 410 (Ind. 2001)).  In determining what a reasonably diligent plaintiff should have discovered, courts are to ask "whether a reasonable person in the [plaintiff's] position . . . , possessing the information [plaintiff] did when [she] did, could have discovered through the exercise of ordinary diligence that the" product caused her

harm.  *Horn v. A.O. Smith Corp.*, 50 F.3d 1365, 1370 (7th Cir. 1995) (applying Indiana law).

Although "the plaintiff's suspicion, standing alone, about the source of her injury is [generally]

insufficient to trigger the onset of the limitations period . . . [,] the limitations period will begin to

run when a physician suggests there is a 'reasonable possibility, if not a probability' that a

specific product caused the plaintiff's injury."  *Nelson*, 288 F.3d at 966 (quoting *Degussa*, 744

N.E.2d at 411).  Finally, a plaintiff need not "uncover the legal theory for holding a defendant

liable for the action to accrue.  Rather, the plaintiff must only be aware that the defendant caused

him injury."  *Frey v. Bank One*, 91 F.3d 45, 47 (7th Cir. 1996) (applying Indiana law); *see*

*Perryman v. Motorist Mut. Ins. Co.*, 846 N.E.2d 683, 689 (Ind. Ct. App. 2006) ("[T]he discovery

rule does not mandate that plaintiffs know with precision the legal injury that has been suffered,

but merely anticipates that a plaintiff be possessed of sufficient information to cause him to

inquire further in order to determine whether a legal wrong has occurred.").

### 3.  Fraudulent Concealment

Under both Texas and Indiana law, the doctrine of fraudulent concealment tolls the

statute of limitations if "a person liable to an action conceals the fact from the knowledge of the

person entitled to bring the action."  Ind. Code § 34-11-5-1; *see Klein v. O'Neal, Inc.*, No. 03-

CV-102, 2008 WL 2152030, at *3 (N.D. Tex. May 22, 2008) ("'The elements of fraudulent

concealment are:  (1) the existence of the underlying tort; (2) the defendant's knowledge of the

tort; (3) the defendant's use of deception to conceal the tort; and (4) the plaintiff's reasonable

reliance on the deception.'") (quoting *Malone v. Sewell*, 168 S.W.3d 243, 251 (Tex. App. 2005)).

Like the discovery rule, however, fraudulent concealment ceases to toll the statute of limitations

once "the plaintiff obtains information that would lead to the discovery of the cause of action

through ordinary diligence."  *Doe v. United Methodist Church*, 673 N.E.2d 839, 844 (Ind. Ct.

App. 1996); *see Etan Indus., Inc. v. Lehmann*, 359 S.W.3d 620, 623 (Tex. 2011) ("The estoppel

effect of fraudulent concealment ends when a party learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry, which, if pursued, would lead to discovery of the concealed cause of action.") (internal quotation marks omitted); *see also Miller v. A.H. Robins Co.*, 766 F.2d 1102, 1107 & n.3 (7th Cir. 1985) (under Indiana law, where plaintiff learned IUD was a "possible cause of her infection," lack of diligence precluded fraudulent concealment toll even though defendant made "a number of false claims and attempted to conceal the dangers of the" product); *Levels v. Merlino*, 969 F. Supp. 2d 704, 722 (N.D. Tex. 2013) (fraudulent concealment analysis "is, generally speaking, the same analysis that applies to the discovery rule").

### 4. Application

Plaintiff alleges that the Mirena's perforation of her uterus and the surgery that was required to remove the IUD from her abdomen caused her severe pain. (*See* SAC ¶¶ 46, 53, 62, 70, 83, 91, 96, 100, 108, 116, 122.) Plaintiff also alleges that the Mirena caused her cervix to thin and ovarian cysts to form. (*See id.* ¶ 44.) Defendants contend that four separate events were each sufficient, on their own, to trigger the statute of limitations: 1) when Plaintiff was told the Mirena may have moved and she should promptly go to the emergency room; 2) when Plaintiff was subsequently diagnosed with a perforated uterus; 3) when surgery was performed to remove the Mirena from her abdomen; and 4) when Plaintiff's doctor told Plaintiff that the Mirena caused her cervix to thin and cysts to form. (Ds' Mem. 8-11.)[2] Plaintiff argues that her claims

---

[2] "Ds' Mem." refers to Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint. (13-MD-2434 Doc. 882.)

did not accrue – and thus the statute of limitations did not begin to run – until May 2013 when she saw a commercial that linked the injuries she suffered to Mirena.  (P's Mem. 3.)[3]

Under both Indiana and Texas law, the statute of limitations for a products liability claim is triggered when a plaintiff knows – or should know through the exercise of ordinary diligence – that a product harmed her and she should inquire into her legal rights.  *See supra* II.D.1, 2.  In Texas, it is when she should have discovered the nature of her injury, *see Vaught*, 107 F.3d at 1140, and in Indiana it is when she should have known that she was injured and the injury was caused by a defendant's product, *see Nelson*, 288 F.3d at 966.  That day, at the latest, occurred when Plaintiff learned that the Mirena perforated her uterus and would have to be removed. Knowledge of these facts was sufficient to trigger the statute of limitations, because when an IUD is found somewhere in a woman's body where it is not supposed to be – here, Plaintiff's abdomen – and surgery is required to remove it, a diligent individual would know, at the very least, that there was a "reasonable possibility," *Nelson*, 288 F.3d at 966, that the IUD harmed her and she should therefore make further inquiry to determine her legal rights, *see Witherspoon v. Bayer HealthCare Pharms. Inc.*, No. 13-CV-1912, 2013 WL 6069009, at *4 (E.D. Mo. Nov. 18, 2013) (under New Jersey law, plaintiff "possessed reasonable medical information connecting Mirena to her injury . . . when she had the IUD removed and was informed at that time that the

---

[3] "P's Mem." refers to Memorandum of Law in Opposition to Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint.  (13-MD-2434 Doc. 945.)

Plaintiff argues that I should not resolve this matter on a motion to dismiss, because determining when the statute of limitations begins to run is a "'fact-specific inquiry.'"  *Id.* at 3 (quoting *Evenson v. Osmose Wood Preserving Co.*, 899 F.2d 701, 705 (7th Cir. 1990)).  Plaintiff's argument fails, because, as explained below, the date on which the statute of limitations began to run is clear from the facts pleaded in the SAC.  *See Twersky v. Yeshiva Univ.*, No. 13-CV-4679, 2014 WL 314728, at *2 (S.D.N.Y. Jan. 29, 2014) ("'Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss.'") (quoting *Ghartey*, 869 F.2d at 162); *see also Kazmer v. Bayer Healthcare Pharms., Inc.*, No. 07-CV-112, 2007 WL 4148003, at *2-*3 (N.D. Ind. Nov. 19, 2007) (applying Indiana law, and finding products liability claim barred by statute of limitations on motion to dismiss where the "Amended Complaint does not raise above the speculative level the possibility that the Plaintiff was unaware that he suffered injuries from the broken syringe until some . . . date" after syringe shattered and glass went into plaintiff's leg).

12

[IUD] had perforated her uterus") (internal quotation marks omitted).  This knowledge also defeats Plaintiff's argument that Defendants' purported fraudulent concealment tolls the statute of limitations.  *See Doe*, 673 N.E.2d at 844; *Etan*, 359 S.W.3d at 623.

These conclusions are even more apparent when the facts surrounding Plaintiff's injuries are contrasted with those of the products liability cases cited in the parties' briefs.  In these cases, plaintiffs experienced symptoms that were not clearly linked to a particular product or substance, and subsequently consulted physicians who were unable to state whether there was a reasonable possibility that the product caused the plaintiff's ailments.  *See, e.g., Nelson*, 288 F.3d at 966-67 (doctor's initial suggestion of a causal link between drug and stroke did not trigger statute of limitations where doctor later dismissed possible connection); *Degussa*, 744 N.E.2d at 411-12 (statute of limitations not triggered when plaintiff "merely suspected that work products had something to do with her illness and [her doctor] said nothing to confirm, deny, or even strengthen her suspicions").  Under such circumstances – *i.e.*, when the information from the plaintiff's doctor was not enough to suggest a reasonable possibility that a product caused the plaintiff harm – courts have held that the statute of limitations was not triggered until a plaintiff received more solid evidence of a causal connection between the product and the injury.  *See, e.g., Evenson*, 899 F.2d at 704 (although plaintiff suspected chemical may have caused his injuries, statute of limitations was not triggered by plaintiff's "mere suspicion" because doctors with whom plaintiff consulted would not confirm his suspicion).  Where, however, the information provided by the doctor was enough to suggest a reasonable possibility that a product caused a plaintiff's harm, that information was sufficient to trigger the statute of limitations.  *See Miller*, 766 F.2d at 1106 (statute of limitations triggered when doctors informed plaintiff that IUD "was a possible cause of her infection"); *Timberlake v. A.H. Robins Co.*, 727 F.2d 1363,

13

1365-66 (5th Cir. 1984) (Texas law, similar); *Coody*, 696 S.W.2d at 155-56 (same); *see also*

*Livingston*, 1999 WL 33537322, at *5 (in products liability suit regarding medical device

implanted during spinal fusion, Texas discovery rule could not toll statute of limitations where

"the plaintiff had manifest back pain and a physician's diagnosis [that the device probably]

cause[d] the pain"); *Cossman v. DaimlerChrysler Corp.*, 133 Cal. Rptr. 2d 376, 380 (Cal. Ct.

App. 2003) (under Indiana law, products liability "cause of action accrued . . . when doctors told

[plaintiff] that [plaintiff] suffered from mesothelioma that was likely caused by exposure to

asbestos").

Here, Plaintiff consulted her physician when she experienced nausea and intermittent

vomiting.  Plaintiff's doctor then told her that the Mirena may have moved.  A second doctor

then told Plaintiff that the Mirena had, in fact, migrated into her abdomen and needed to be

removed as soon as possible.  Emergency surgery was then performed to remove Plaintiff's

Mirena.  Plaintiff then experienced pain associated with removal of the Mirena and the

perforation of her uterus, and a doctor told her the Mirena caused ovarian cysts to form.  There

simply was no mystery regarding a possible connection between Plaintiff's injuries and the

Mirena – *i.e.*, the connection was sufficiently obvious that a diligent individual in Plaintiff's

position would have inquired into whether she had a claim regarding her Mirena.  *See Allen v.

Bayer Healthcare Pharms., Inc.*, No. 14-CV-178, 2014 WL 655585, at *4 (E.D. Mo. Feb. 20,

2014) (distinguishing toxic tort asbestos cases from Mirena migration case because "medical

support linking plaintiffs' injuries to the exposure of asbestos was not publically available by any

means . . . [and] could not even be ascertained by the medical field . . . [, whereas Mirena

plaintiff who had Mirena surgically removed] could have diligently performed research and

discovered her potential claim"); *cf. Levels*, 969 F. Supp. 2d at 722 ("The Court conducts an

14

objective inquiry into whether the plaintiff should have discovered the injury, not an inquiry into the plaintiff's subjective belief as to whether the injury could be remedied."). When the plaintiff knows that the IUD is no longer in the uterus and has to be removed from wherever it has migrated, the conclusion that the statute of limitations is triggered seems unavoidable. *See Witherspoon*, 2013 WL 6069009, at *4. In short, upon being told that Defendants' product had perforated her uterus and migrated into her abdomen, Plaintiff knew she was injured and that the injury was in some way caused by Defendants' product, or, to put it differently, knew the nature of her injury.

Plaintiff asserts, however, that the statute of limitations was not triggered by these events, because: 1) the SAC states she did not know the Mirena had harmed her; 2) she had no reason to suspect the Mirena had harmed her, because she received no warnings regarding post-insertion events and thus suspected the Mirena had merely been inserted improperly; and 3) no doctor specifically informed her that the Mirena had malfunctioned and/or the product's design or defect was the reason the Mirena perforated her uterus. (*See* P's Mem. 3-11.)[4] While Plaintiff's first assertion regarding her subjective belief is simply not relevant to the discovery rule inquiry, *see Horn*, 50 F.3d at 1370; *Levels*, 969 F. Supp. 2d at 722, given the importance of this decision to like-positioned plaintiffs, I will detail the flaws in Plaintiff's argument that a reasonably diligent individual in Plaintiff's position would not have possessed enough information to prompt her to inquire into her legal rights.

---

[4] Plaintiff's counsel stressed this last point at oral argument, asserting – even though this fact was alleged nowhere in the SAC after Plaintiff was given leave to amend to state all facts relevant to the statute of limitations (*see* 13-MD-2434 Doc. 736) – that when the Mirena was removed, Plaintiff asked her doctor why the perforation had happened, and her doctor shrugged. *See* Oral Argument Transcript ("OA Tr.") 29. Despite Plaintiff's counsel's neglect, I will treat this fact as if it was pleaded.

Before addressing these arguments individually, I will note a common theme that permeates Plaintiff's brief and Plaintiff's counsel's assertions during oral argument that – in the Court's view – is contrary to Texas and Indiana law.  Counsel appears to believe that a plaintiff must possess a level of knowledge well beyond the fact that a product injured her.  Under Plaintiff's reading of the law, a plaintiff would both need to know that a product harmed her and possess some theory as to how or why.  Plaintiff's reading of the law, however, sets too high a bar under both Texas and Indiana law, neither of which requires a plaintiff to discover what cause of action she can assert.  *See Vaught*, 107 F.3d at 1141-42; *Frey*, 91 F.3d at 47; *Coody*, 696 S.W.2d at 156.  Rather, Texas and Indiana courts adopted discovery rules under which a statute of limitations does not begin to run until a plaintiff learns, or through the exercise of ordinary diligence should have learned, *that* a defendant's product injured her, so that the statute of limitations would provide a meaningful period during which plaintiffs can research *how* the product harmed her – *i.e.*, whether the manufacturer in fact committed a tort and what causes of action she could assert against that manufacturer.  *See, e.g., Degussa*, 744 N.E.2d at 411 (when a plaintiff knows, or has reason to know, "that there is a reasonable possibility, if not a probability that an injury was caused by an act or product . . . the plaintiff is deemed to have sufficient information such that he or she should promptly seek additional medical or legal advice needed to resolve any remaining uncertainty or confusion regarding the cause of his or her injuries, and therefore be able to file a claim within two years of being [so] informed") (internal quotation marks omitted); *Coody*, 696 S.W.2d at 156 (discovery rule tolls statute of limitations until injury

is discovered, whereupon "[t]he burden was on [plaintiff] to determine whether she should file suit").[5]

Plaintiff argues – although it is nowhere alleged in the SAC – that she suspected she had been injured because of her doctor's negligence.  (*See* P's Mem. 4.)  The suggestion that this suspicion tolled the statute of limitations on her products liability claims, (*see id.*), is unavailing.  Although knowledge of a possible link between a patient's symptoms and a product may not be enough to trigger the statute of limitations if a doctor tells the patient the product is one of a large number of potential causes, *see, e.g., Degussa*, 744 N.E.2d at 411, that situation is simply not presented here.  A reasonable individual in Plaintiff's position might well have suspected two

---

[5] At oral argument – although she cites this case at no point in her brief – Plaintiff seized on language in *Wehling v. Citizens Nat'l Bank*, 586 N.E.2d 840 (Ind. 1992)), that states the statute of limitations is triggered "when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the *tortious* act of another." *Id.* at 843 (emphasis added); *see* OA Tr. 19-20.  Plaintiff interprets this language to mean that not only did she need to know that Defendants' product caused her harm in order to trigger the statute of limitations, but she also needed to know that Defendants engaged in tortious or otherwise wrongful behavior. *See, e.g.*, OA Tr. 15-17.  To the extent *Wehling* – which involved a claim that the defendant-bank negligently recorded a deed and the core holding of which was that the discovery rule applies to all negligence claims, *see Wehling*, 586 N.E.2d at 841-42 – ever required knowledge beyond the fact that a defendant's product harmed the plaintiff, subsequent caselaw makes clear that such knowledge is not required in products liability cases.  For instance, in *Degussa Corp. v. Mullens*, a products liability case in which the Indiana Supreme Court cites *Wehling*, *see* 744 N.E.2d at 410, the Court omits the word "tortious" from the discovery rule standard, *see id.* ("The two-year statute of limitations begins 'to run from the date the plaintiff knew or should have discovered that she suffered an injury or impingement, and that it was caused by the product or act of another.'") (quoting *Barnes v. A.H. Robins Co.*, 476 N.E.2d 84, 87-88 (Ind. 1985)).  In conducting the discovery rule analysis in *Degussa*, the Court simply looked to whether the facts known to the plaintiff evinced "a reasonable possibility, if not a probability, that an injury was caused by [defendant's] act or product." *Id.* at 411 (internal quotation marks omitted).  The Court did not discuss whether the plaintiff knew the defendant's conduct was tortious or wrongful.  Plaintiff does not cite, and I have not found, any products liability cases since *Wehling* in which a court applying Indiana (or Texas) law looked to whether a plaintiff knew or should have known that the defendant's actions were tortious.  Instead, as stated previously, these courts analyze whether a plaintiff knew or should have known that a product caused her injuries. *See, e.g., Nelson*, 288 F.3d at 966-67 (applying Indiana law); *Porterfield v. Ethicon, Inc.*, 183 F.3d 464, 467 (5th Cir. 1999) (applying Texas law).  Requiring a plaintiff to know that a defendant acted in a tortious or wrongful manner in order to trigger the statute of limitations would be contrary to the consistent refrain of Indiana (and Texas) courts that a plaintiff need not know what cause of action she can assert. *See Vaught*, 107 F.3d at 1141-42 ("[T]he question to be determined is not whether a plaintiff has actual knowledge of the particulars of a cause of action . . . .") (internal quotation marks omitted); *Frey*, 91 F.3d at 47 (plaintiff's argument that statute of limitations was tolled until plaintiff knew defendant's actions were negligent "misstate[d] the law of Indiana . . . [because] the plaintiff must only be aware that the defendant caused him injury"); *Coody*, 696 S.W.2d at 156 (where plaintiff argued limitation period should begin to run at time she learned IUD was defectively designed, court held that discovery rule "does not operate to toll the running of the limitation period until such time as plaintiff discovers all of the elements of a cause of action," but rather just until she "learned that she had been injured").

17

principal possible causes of the perforation, migration and resulting harm: medical malpractice or a defective product. That Plaintiff in fact suspected that only the inserting doctor's negligence caused the harm is irrelevant. *See Levels*, 969 F. Supp. 2d at 722. A diligent individual in Plaintiff's position would have possessed enough information to explore both potential causes, and the mere existence of an alternative explanation for Plaintiff's injuries – that it was the inserting doctor's fault, not the device's – does not mean that the information Plaintiff possessed was insufficient to prompt her to research the device's role in causing her injuries. *See Miller*, 766 F.2d at 1105-06 (under Indiana law, statute of limitations for products liability claim began to run when doctors told plaintiff her IUD "was one of several possible causes of her illness"); *see also Nelson*, 288 F.3d at 964 (Indiana law does not "require[] a plaintiff to know, to a medical or legal certainty, the cause of his injuries before his cause of action will accrue under the discovery rule"); *Vaught*, 107 F.3d at 1142 ("Texas has declined to construe the discovery rule to toll limitations periods until 'a plaintiff discovers a specific cause of action against a specific defendant.'") (quoting *Moreno*, 760 S.W.2d at 357 n.9); *Degussa*, 744 N.E.2d at 411 ("[A] plaintiff need not know with certainty that malpractice caused his injury, to trigger the running of the statutory time period."). Once Plaintiff learned that the Mirena had perforated her uterus and surgery was required to remove it, she had clearly suffered an injury from the device's perforation and migration, which would have prompted a reasonably diligent individual to inquire into why the Mirena perforated her uterus. Whether that inquiry revealed the Mirena perforated her uterus because of the doctor's malpractice or the product's failure is simply irrelevant to the issue of when the statute of limitations was triggered on Plaintiff's products liability claims.

Plaintiff's argument that she could not have known that the Mirena caused the perforation because the warning indicated migration would not occur after the first few days following insertion, (*see* P's Mem. 8), is similarly misguided.  Regardless of what the label said, Plaintiff knew that the Mirena had perforated her uterus and migrated into her abdomen, and that this perforation and migration required emergency surgery.  This was clearly sufficient to put Plaintiff on notice that the Mirena harmed her and she should inquire into her rights.  *See Witherspoon*, 2013 WL 6069009, at *4 (holding plaintiff's claim accrued under New Jersey law, at the latest, when plaintiff's doctor told her Mirena perforated her uterus).  Moreover, under Plaintiff's proposed interpretation of Indiana and Texas law, the statute of limitations for products liability claims related to medical devices would in effect be rendered a nullity if the warnings associated with the product do not warn – or minimize the risk – of the specific harm a plaintiff experienced.  *Cf. Evenson*, 899 F.2d at 702-05 & n.1 (applying same discovery rule analysis to failure to warn as other products liability claims); *Wyeth-Ayerst Labs. Co. v. Medrano*, 28 S.W.3d 87, 95 (Tex. App. 2000) (products liability claim based on inadequate warning accrued when plaintiff "should have discovered her injuries").[6]

Finally, in this case, the fact that a doctor did not specifically tell Plaintiff that the Mirena had moved because the product was defective is insufficient to continue to toll the statute of limitations.  *See Frey*, 91 F.3d at 47 (under Indiana law, a plaintiff need not "uncover the legal theory for holding a defendant liable for the action to accrue.  Rather, the plaintiff must only be aware that the defendant caused him injury"); *Vaught*, 107 F.3d at 1140 (under Texas law, "a cause of action may accrue before a plaintiff actually learns the details by which to establish his

---

[6] Indeed, the alleged absence of a warning presents the clearest case for the statute of limitations starting to run at the time of the surgery.  Plaintiff knew her Mirena had migrated; she knew the migration had occurred well after insertion; and she allegedly knew she had not been warned that migration could occur after insertion.  It is hard to imagine why this scenario would toll rather than start the running of the limitations period.

cause of action") (internal quotation marks omitted); *Coody*, 696 S.W.2d at 156 (under Texas law, claim accrued when doctor told patient that her "injury was caused by her use of the IUD," not when plaintiff "discovered that the IUD in question was a Dalkon Shield and that it was defectively designed").  As stated previously, unlike toxic tort or other latent injury cases, there was no mystery that the Mirena had harmed Plaintiff.  Once Plaintiff learned that the Mirena had perforated her uterus and needed to be removed, she had enough information to inquire into causation and, therefore, the statute of limitations began to run.  *See Kazmer*, 2007 WL 4148003, at *3 (under Indiana law, statute of limitations for products liability claim involving shattered syringe commenced when syringe shattered and cut plaintiff because at that point "the Plaintiff was aware that he suffered and sustained injury . . . and was aware that the injuries were caused by the shattered syringe").[7]

For the foregoing reasons, the statute of limitations on Plaintiff's products liability claims – under both Texas and Indiana law – began to run on July 8 or 9, 2011, when Plaintiff learned the Mirena had perforated her uterus and needed to be removed.  Plaintiff did not file this case until September 28, 2013.  Because Texas and Indiana both apply two year statutes of limitations to products liability actions,[8] Plaintiff's products liability claims are time-barred.

---

[7] Under Plaintiff's theory, as explained at oral argument, the statute of limitations would not begin to run until there was government action involving Mirena, such as a label change, or publicity about other lawsuits came to Plaintiff's attention.  *See* OA Tr. 17-18, 30-31.  Further, as Plaintiff's counsel articulated her theory, potential plaintiffs would have an ongoing duty to periodically check whether, since the injury, there had been developments suggesting a case could be brought.  *See* OA Tr. 33-36.  Unsurprisingly, no authority for such a rule has been presented.

[8] Moreover, because all of Plaintiff's products liability claims are barred under Texas law, I need not reach the question of whether the claims sounding in defective design or manufacture would be barred under the laws of the locales where Mirena was designed or manufactured.  I note, however, that under New Jersey law – which I was told at oral argument is the state of manufacture, *see* OA Tr. 7 – the result would be the same.  *See Witherspoon*, 2013 WL 6069009, at *4 (plaintiff's claim accrued under New Jersey law, at the latest, when plaintiff's doctor told her Mirena perforated her uterus).

### E.  Breach of Express Warranty - Cause of Action Seven

Texas Business & Commerce Code § 2.725 governs the statute of limitations for breach of warranty claims.  This statute, which is substantially identical to the Uniform Commercial Code ("UCC") provision also adopted by Indiana, states,

> (a)  An action for breach of any contract for sale must be commenced within four (4) years after the cause of action has accrued. . . .
> (b)  A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach.  A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

Tex. Bus. & Com. Code § 2.725; *see* Ind. Code §§ 26-1-2-725(1), (2).  Under these provisions, the statute of limitations for Plaintiff's breach of express warranty claim would begin to run from the date the Mirena was inserted – on or about April 30, 2009 – unless there was an express warranty that explicitly extended to future performance.  *See In re Mentor Corp. ObTape Transobturator Sling Prods. Liab. Litig.*, No. 08-MD-2004, 2013 WL 592409, at *4 (M.D. Ga. Feb. 14, 2013) (under Indiana law, delivery occurred when Plaintiff was implanted with suburethral sling product); *Livingston*, 1999 WL 33537322, at *6 (under Texas law, delivery occurred when spinal fusion device was inserted in plaintiff's spine).  If such an express warranty existed, the statute of limitations would be triggered when Plaintiff should have discovered the breach of the warranty – here, on July 8 or 9, 2011.  *See Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523, 531 (7th Cir. 1999) (applying Indiana law); *Safeway Stores, Inc. v. Certainteed Corp.*, 710 S.W.2d 544, 546 (Tex. 1986) (applying Texas law).  Because Plaintiff did not file this case until September 26, 2013, her breach of express warranty claim will be timely only if there was an express warranty that "explicitly extends to future performance of the goods."  Tex. Bus. & Com. Code § 2.725.

"Courts construe the [explicitness extension] exception narrowly, with the emphasis on the term 'explicitly.'" *Safeway*, 710 S.W.2d at 548.  "For an express warranty to meet the exception, it must make specific reference to a specific date in the future." *Id.*; *accord Tolen v. A.H. Robins Co.*, 570 F. Supp. 1146, 1153 (N.D. Ind. 1983) (applying Indiana law).  Examples of express warranties that meet this requirement include a "'lifetime warranty' or a warranty that a product would work satisfactorily 'at all times.'"  *Tolen*, 570 F. Supp. at 1154 (internal citations omitted); *see also id.* (warranty "[f]or a period of several years" was insufficiently explicit).

Before an express warranty can extend to future performance, obviously, an express warranty must in fact have been created.  Under Texas law,

> [e]xpress warranties by the seller are created as follows:  (1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.  (2) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description. . . .  It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty . . . .

Tex. Bus. & Com. Code §§ 2.313; *see* Ind. Code § 26-1-2-313 (listing substantially similar requirements).

Plaintiff does not plead an express warranty at all, let alone one that extends to future performance, (*see* Ds' Reply 9; *see also* SAC ¶ 24 (stating solely that Mirena "is approved to remain in the uterus for up to five (5) years")),[9] so this claim is dismissed as time-barred, *see In re Mentor*, 2013 WL 592409, at *3 (dismissing express warranty claim as time-barred where plaintiff "did not point the Court to evidence of an express warranty . . . that explicitly extends to future performance").  The SAC does not point to any statement or promise by Defendants that

---

[9] "Ds' Reply" refers to Reply Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint.  (13-MD-2434 Doc. 977.)

became a basis of the bargain or would otherwise qualify as an express warranty.  Based on the

allegations in the SAC, (see SAC ¶¶ 24, 97-100), even absent dismissal on statute of limitations

grounds, Plaintiff's breach of express warranty cause of action would have to be dismissed on a

future motion because the facts as pleaded do not permit a reasonable inference that Defendants

are liable for this claim.  *See Omni USA, Inc. v. Parker-Hannifin Corp.*, 964 F. Supp. 2d 805,

814 (S.D. Tex. 2013) (under Texas law, "[t]he elements of a cause of action for breach of

express warranty are (1) the defendant-seller made an express affirmation of fact or promise

relating to the goods; (2) the affirmation or promise became part of the bargain; (3) the plaintiff

relied upon that affirmation or promise; (4) the goods did not comply with the affirmation or

promise; (5) the plaintiff was damaged by the noncompliance; and (6) the failure of the product

to comply was the proximate cause of the plaintiff's injury"); *Easyrest, Inc. v. Future Foam,

Inc.*, No. 06-CV-2, 2007 WL 2705582, at *1 (S.D. Ind. Sept. 12, 2007) (listing similar elements

under Indiana law).

        If Plaintiff wishes to pursue her breach of express warranty claim based on a statement in

the Patient Information Booklet, (*see* 13-MD-2434 Doc. 882-2, at 2 ("Mirena is a hormone-

releasing system placed in your uterus to prevent pregnancy for up to 5 years.")), to which she

referred at oral argument, *see* OA Tr. 48, she must, by letter not to exceed three pages and within

two weeks of the entry of this Order, show cause why I should permit her to file a Third

Amended Complaint, particularly when I permitted the SAC specifically so that she could add

facts needed to combat a motion to dismiss based on the statute of limitations.  In the letter,

Plaintiff must also assert what additional facts she would plead to 1) state a breach of express

warranty claim upon which relief could be granted and 2) demonstrate entitlement to tolling the

statute of limitations based on an express warranty that explicitly extends to future

performance.[10]  In other words, Plaintiff must explain, among other things, what she claims

Defendants promised, how she relied on the promise, how the device failed to conform, and how

she was thereby injured.  If Plaintiff submits such a letter, Defendants may respond two weeks

later, also by letter not to exceed three pages.

### F.  Breach of Implied Warranty – Cause of Action Six

The Texas and Indiana laws that provide four-year statutes of limitations for breach of

express warranty claims also govern implied warranty claims.  *See Safeway*, 710 S.W.2d at 545;

*Tolen*, 570 F. Supp. at 1152-53.  While otherwise time-barred express warranty claims may be

saved by a warranty that explicitly extends to future performance, the statute of limitations for

implied warranty claims cannot be extended past four years from the date of delivery.  *Safeway*,

710 S.W.2d at 546 (applying Texas law and collecting cases from several states); *accord Tolen*,

570 F. Supp. at 1154 (applying Indiana law).  This is because "[t]he drafters of the Uniform

Commercial Code intended to reserve the benefits of an extended warranty to those who

explicitly bargained for them."  *Safeway*, 710 S.W.2d at 546.  As explained above, delivery of

the Mirena occurred when it was implanted in Plaintiff's uterus on or about April 30, 2009.

Because Plaintiff did not file this case until September 26, 2013 – more than four years after her

Mirena was inserted – her breach of implied warranty claim is time-barred.

### G.  Negligent Misrepresentation – Cause of Action Eight

Under Texas law,[11] "[t]he statute of limitations for negligent misrepresentations claims is

two years."  *Ptasynski v. Shell W. E & P Inc.*, No. 99-11049, 2002 WL 32881277, at *3 (5th Cir.

---

[10] The Court is not convinced that a description of Mirena as a system that lasts up to five years amounts to an express warranty, as defined under Texas and Indiana law, when that statement appears in the same booklet that states that a user may get pregnant while using the product and that warns of the risk of perforation.

[11] Given the clarity of Texas's statute of limitations for negligent misrepresentation claims, I will solely discuss Texas law with regard to this claim.

Feb. 13, 2002) (citing *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 885 (Tex. 1998)); *accord*

*Livingston*, 1999 WL 33537322, at *4; *see also Milestone Props., Inc. v. Federated Metals*

*Corp.*, 867 S.W.2d 113, 118-19 (Tex. App. 1993) (explaining why two year statute of limitations

applies to negligent misrepresentation claims). Even if the discovery rule applies to Plaintiff's

negligent misrepresentation claim, for the reasons stated previously, the statute of limitations

would begin to run on July 8 or 9, 2011. Because Plaintiff did not file this case until September

26, 2013, the negligent misrepresentation claim is time-barred.

### H. Fraud - Causes of Action Nine and Ten

Texas and Indiana employ four and six year statutes of limitations, respectively, for fraud

claims. *See* Tex. Civ. Prac. & Rem. Code § 16.004(a)(4); Ind. Code § 34-11-2-7(4). Applying

the discovery rule to Plaintiff's fraud claims, they would not have accrued until July 8 or 9, 2011,

and would thus be timely under either state's fraud statute of limitations. Defendants, however,

contend that, under Indiana law, the two-year products-liability statute of limitations applies to

Plaintiff's fraud claims because the fraud claims are, in substance, products liability claims. (*See*

Ds' Reply 9.) Defendants cite an on-point case from Indiana, *Tolen v. A.H. Robins Co.*, 570 F.

Supp. 1146 (N.D. Ind. 1983), in which a plaintiff's fraud claim was asserted along with products

liability claims. The alleged fraud related to an IUD manufacturer's false representations and

was treated as a products liability claim for statute of limitations purposes. *See id.* at 1155-56.

Plaintiff, however, argues with some force that *Tolen*'s fraud statute of limitations holding is no

longer good law in Indiana. (*See* P's Mem. 20.)

Although Defendants are correct that *Tolen* is on all fours with this case, it is not binding

on this Court. Further, upon reviewing the caselaw, it seems as if the rule applied in *Tolen*

would not be applied in Indiana today. *See Lawyers Title Ins. Corp. v. Pokraka*, 595 N.E.2d 244,

247 (Ind. 1992) (if court was to accept defendant's position that "substance of a cause of action" governed which statute of limitations applied, the codified statute of limitations "relating to fraud and oral contracts would be unnecessary . . . [which] would be tantamount to judicially repealing these six-year statutes of limitation"); *cf. Lewis v. Methodist Hosp., Inc.*, 326 F.3d 851, 854 (7th Cir. 2003) ("[I]n considering how to classify a claim for statute-of-limitations purposes, the Supreme Court of Indiana has warned that Indiana courts (and thus federal courts sitting in diversity that are applying Indiana law) must not collapse all breach of contract claims into tort claims [because d]oing so would impermissibly . . . repeal . . . separate statutes of limitations . . . for [such] claims.") (citing *Lawyers Title*, 595 N.E.2d at 247).  Further, Texas does not appear to have any *Tolen*-like rule.

I need not decide this issue, however, because Plaintiff's fraud claims clearly do not meet the standard for pleading a fraud set forth in Fed. R. Civ. P. 9(b).  *See Kalie v. Bank of Am. Corp.*, 297 F.R.D. 552, 556 (S.D.N.Y. 2013) ("[T]o comply with Rule 9(b), the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent . . . [and] must also plead facts that give rise to a strong inference of fraudulent intent.") (internal quotation marks and citations omitted).  If Plaintiff wishes to pursue her fraud claims, she must show cause, by letter not to exceed three pages and within two weeks of the entry of this Order, why the Court should not dismiss her fraud claims for failure to comply with Fed. R. Civ. P. 9(b).[12]  If Plaintiff submits such a letter, Defendants may respond by a like letter two weeks thereafter.

---

[12] If Plaintiff seeks to amend again, she must explain why I should permit another amendment, and present a proposed pleading that comports with Rule 9(b) and provides the other facts necessary for a plausible fraud claim, such as facts plausibly supporting Defendants' knowledge or reckless ignorance of the falsity of their

### III.       CONCLUSION

For the foregoing reasons, Defendants' Motion is GRANTED IN PART and DENIED IN PART.  All of Plaintiff's claims are DISMISSED as time-barred except for the fraud claims. The Clerk of Court is respectfully requested to terminate the pending Motion.  (13-CV-7811 Doc. 33; 13-MD-2434 Doc. 881.)

SO ORDERED.

Dated: July 2, 2014
          White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.

---

representations, and Plaintiff's reliance on those representations.  *See Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 217 (Tex. 2011) ("A plaintiff seeking to prevail on a fraud claim must prove that (1) the defendant made a material misrepresentation; (2) the defendant knew the representation was false or made the representation recklessly without any knowledge of its truth; (3) the defendant made the representation with the intent that the other party would act on the representation or intended to induce the other party's reliance on the representation; and (4) the plaintiff suffered an injury by actively and justifiably relying on that representation."); *Wells v. Stone City Bank*, 691 N.E.2d 1246, 1250 (Ind. Ct. App. 1998) ("To sustain an action for actual fraud, a party must prove five elements:  1) that there was a material misrepresentation of past or existing fact; 2) that the representation was false; 3) that the representation was made with knowledge or reckless ignorance of its falsity; 4) that the complaining party relied on the representation; and 5) that the representation proximately caused the complaining party's injury.").